UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| SHARRON ATKINS, ) |
|     *Plaintiff*, ) |
| ) |
|     *vs.* ) | 1:11-cv-772-JMS-MJD |
| ) |
| KROGER COMPANY, *et al.*, ) |
|     *Defendants*. ) |

# ORDER

Presently pending before the Court is Defendants Matthew Broadnax, City of Carmel ("Carmel"), William Gilbert, and Brett Keith's (collectively, "the Government Defendants") Motion for Summary Judgment. [Dkt. 46.]  In response to the Government Defendants' motion, Ms. Atkins agrees that summary judgment in favor of Officer Gilbert and Sergeant Keith is appropriate on all of her claims against them. [Dkt. 95 at 2.]  She also concedes that Officer Broadnax is immune from her state law claims in his individual capacity pursuant to Indiana Code § 34-13-3-5(b) and that Carmel is immune from her state law claims for negligence, negligent infliction of emotional distress, and intentional infliction of emotional distress pursuant to Indiana Code § 34-13-3-3(8). [Id. at 10 n.2.]  Ms. Atkins further concedes that both Officer Broadnax and Carmel are entitled to summary judgment on her battery claim. [Id.]  Therefore, the only remaining claims at issue in this motion are Ms. Atkins' claims against Carmel for false arrest and imprisonment, as well as her claim against Officer Broadnax for allegedly violating 42 U.S.C. § 1983. [Id.; dkt. 112; dkt. 95 at 12.]  The Court will limit its discussion to those remaining claims.

# I.
## STANDARD OF REVIEW

A motion for summary judgment asks that the Court find that a trial based on the uncontroverted and admissible evidence is unnecessary because, as a matter of law, it would conclude in the moving party's favor. *See* Fed. R. Civ. Pro. 56. To survive a motion for summary judgment, the non-moving party must set forth specific, admissible evidence showing that there is a material issue for trial. Fed. R. Civ. Pro. 56(e); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

As the current version of Rule 56 makes clear, whether a party asserts that a fact is undisputed or genuinely disputed, the party must support the asserted fact by citing to particular parts of the record, including depositions, documents, or affidavits. Fed. R. Civ. Pro. 56(c)(1)(A). A party can also support a fact by showing that the materials cited do not establish the absence or presence of a genuine dispute or that the adverse party cannot produce admissible evidence to support the fact. Fed. R. Civ. Pro. 56(c)(1)(B). Affidavits or declarations must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant is competent to testify on matters stated. Fed. R. Civ. Pro. 56(c)(4). Failure to properly support a fact in opposition to a movant's factual assertion can result in the movant's fact being considered undisputed, and potentially the grant of summary judgment. Fed. R. Civ. Pro. 56(e).

The Court need only consider the cited materials, Fed. R. Civ. Pro. 56(c)(3), and the Seventh Circuit Court of Appeals has "repeatedly assured the district courts that they are not required to scour every inch of the record for evidence that is potentially relevant to the summary judgment motion before them," *Johnson v. Cambridge Indus.*, 325 F.3d 892, 898 (7th Cir. 2003). Furthermore, reliance on the pleadings or conclusory statements backed by inadmissible evidence is insufficient to create an issue of material fact on summary judgment. *Id.* at 901.

The key inquiry, then, is whether admissible evidence exists to support a plaintiff's claims or a defendant's affirmative defenses, not the weight or credibility of that evidence, both of which are assessments reserved to the trier of fact. *See Schacht v. Wis. Dep't of Corrections*, 175 F.3d 497, 504 (7th Cir. 1999). When evaluating this inquiry, the Court must give the non-moving party the benefit of all reasonable inferences from the evidence submitted and resolve "any doubt as to the existence of a genuine issue for trial . . . against the moving party." *Celotex*, 477 U.S. at 330.

## II.
### BACKGROUND

The material facts in the light most favorable to the non-movant, Ms. Atkins, are as follows. On April 15, 2010, Ms. Atkins went to a Kroger Company ("Kroger") grocery store in Carmel to recycle plastic bags. [Dkts. 48-2; 94-2 at 2.] Ms. Atkins parked her Jeep Cherokee in the fire lane in front of the main store entrance, opened her trunk to get the plastic bags, went inside the store to recycle them, came back out, and closed the trunk. [Dkt. 94-2 at 3.]

Kroger had crates of flowers for sale outside the front entrance of the store near where Ms. Atkins had parked. [Dkt. 87-6.] Shortly after Ms. Atkins left the store, April Smith, a Kroger employee, called 911 and reported that a customer, later identified as Ms. Atkins, had stolen some flowers from the store. [Dkt. 112 at 2.] Carmel Police Officer Matthew Broadnax was dispatched to the store to investigate the allegations. [Dkt. 87-6.] Officer Broadnax talked to Ms. Smith, who accused Ms. Atkins of stealing two trays of Ranunculus flowers, worth approximately $80. [*Id.*] Officer Broadnax reviewed a video surveillance tape and confirmed that it showed "substantially the same events as the witness." [*Id.*] Officer Broadnax noted, however, that "due to a shadow created by the sun, you cannot see the suspect put the items in her car." [*Id.*] Ms. Smith told Officer Broadnax that although she did not know the suspect's name, she

was a "regular customer" at the store who often talked about caring for her ninety-year-old father. [*Id.*]

Ms. Atkins returned to Kroger the following day to pick up a few food items. [Dkt. 94-2 at 3.] She was in the store approximately fifteen minutes. [Dkt. 94-2 at 4.] Ms. Smith saw Ms. Atkins in the store and again called the police. [Dkt. 87-6 at 2.] Officer James Herron was dispatched to the store, and Ms. Smith recounted what she had told Officer Broadnax the previous day. [Dkt. 87-8 at 2.] Ms. Smith told Officer Herron that she had "a good view" the previous day and that she saw Ms. Atkins place "at least three trays of potted plants in the rear hatch" of her car. [Dkt. 87-8 at 2.]

Shortly thereafter, Officer Gilbert and Sergeant Keith performed a traffic stop on Ms. Atkins' vehicle as she was driving home. [Dkts. 87-7; 87-9; 94-2 at 4.] Ms. Atkins initially told Sergeant Keith that she had not been at Kroger the previous day, but later remembered being there to recycle. [Dkt. 87-9 at 2.] She "strongly denied" stealing any flowers. [Dkts. 87-9 at 2; 87-7 at 2.] Ms. Atkins was read her *Miranda* rights during the stop, [dkt. 87-9 at 2], and was released after being issued a criminal trespass warning for Kroger's property, [dkt. 87-7 at 2]. The traffic stop lasted approximately 66 minutes. [Dkts. 87-14; 87-15.]

Four days later, on April 20, 2010, Officer Broadnax executed an Affidavit for Probable Cause against Ms. Atkins. [Dkt. 87-6.] Ms. Atkins was charged with conversion, a class A misdemeanor, [dkt. 87-11], but the charges were dismissed by the Hamilton County Prosecutor's Office in August 2010, [dkt. 87-12].

Ms. Atkins filed a state court action in February 2011, and the Defendants removed it to federal court in June 2011 after Ms. Atkins amended her complaint to assert federal claims.

[Dkts. 1; 1-8.] The Government Defendants now move for summary judgment.[1] [Dkt. 46.] For the following reasons, the Court grants the Government Defendants' motion and enters summary judgment in their favor on all of Plaintiff Sharron Atkins' claims against them.

## III.
### DISCUSSION

### A.  Claim Against Officer Broadnax Under 42 U.S.C. § 1983

Ms. Atkins' claims against Officer Broadnax are based upon his execution of a probable cause affidavit allegedly without possessing the requisite probable cause. [Dkt. 95 at 7.] Specifically, Ms. Atkins contends that Officer Broadnax did not have probable cause because Kroger's surveillance video allegedly shows that Ms. Smith's statements about Ms. Atkins were not reliable. [*Id.*] Accordingly, Ms. Atkins alleges that Officer Broadnax violated her rights by making false claims about her in the probable cause affidavit. [*Id.* ("[Officer Broadnax's] claim is simply false.").]

The parties dispute whether the Kroger surveillance video supports Ms. Smith's allegation that Ms. Atkins stole flowers from the store. Officer Broadnax argues that reasonable minds could differ whether the video supports Ms. Smith's allegations and, therefore, that he is entitled to qualified immunity on Ms. Atkins' 42 U.S.C. § 1983 claim. [Dkt. 47 at 14.] Ms. Atkins argues that reasonable minds could not differ because the video "destroys [Ms.] Smith's credibility" and "flatly contradicts [Ms.] Smith's statements." [Dkt. 95 at 8, 10.] Accordingly, Ms. Atkins argues that Officer Broadnax lacked probable cause when he executed the affidavit, which then violated her Fourth Amendment right to be free from unreasonable seizures. [*Id.* at 9.]

---

[1] Kroger has also moved for summary judgment, [dkt. 35], and the Court will address that motion by separate entry.

Qualified immunity "shields government officials against suits arising out of their exercise of discretionary functions as long as their actions could reasonably have been thought consistent with the rights they are alleged to have violated." *Purtell v. Mason*, 527 F.3d 615, 621 (7th Cir. 2008) (citation omitted). The doctrine is broad, "protecting all but the plainly incompetent or those who knowingly violate the law." *Id.* Qualified immunity leaves "ample room for mistaken judgments by police officers." *Id.*

Deciding a claim of qualified immunity "generally involves two inquiries: (1) has the plaintiff alleged facts that, if proved, would establish a constitutional violation; and (2) would a reasonable officer have known his actions were unconstitutional in light of clearly established law?" *Whitlock v. Brown*, 596 F.3d 406, 410-11 (7th Cir. 2010) (citing *Saucier v. Katz*, 533 U.S. 194 (2001)). If appropriate, the Court is "permitted to skip directly to the second question." *Whitlock*, 596 F.3d at 408 (citing *Pearson v. Callahan*, 555 U.S. 223, 236 (2009)). Whether a government official is entitled to qualified immunity is a question of law for the court. *Purtell*, 527 F.3d at 621.

The Court finds *Whitlock v. Brown* to be instructive on qualified immunity issues regarding probable cause. In *Whitlock*, two campers found several bags that looked like they had been left behind at another campsite. 596 F.3d at 408. The campers put the bags in their trunk with the intent to turn them in to the park office but forgot about the bags on their way out of the park to run errands. *Id.* They later realized their mistake, determined the identity of the owner based on the contents of the bags, and left the owner a message letting him know that they were taking the bags to the park office. *Id.* at 409. The owner had already reported the bags as stolen to the park office, and when the campers went to turn them in, they were accused of stealing the bags. *Id.* Although the park officer called the owner of the bags and verified that he had received a

message from the campers and that nothing was missing, the officer omitted that and other exculpatory facts from a subsequent probable cause affidavit. *Id.* The campers were charged with conversion under Indiana law, but the charges were later dropped. *Id.* The campers sued the park officer under § 1983, alleging that he violated their constitutional rights by intentionally withholding exculpatory information from the probable cause affidavit. *Id.* at 410.

On appeal from the district court's grant of summary judgment in favor of the park officer, the Seventh Circuit Court of Appeals emphasized that "we must keep in mind that probable cause is a common-sense inquiry requiring only a probability of criminal activity; it exists whenever an officer or a court has enough information to warrant a prudent person to believe criminal conduct has occurred." *Whitlock*, 596 F.3d at 411; *see also United States v. McCauley*, 659 F.3d 645, 651 (7th Cir. 2011) ("[W]hen police officers obtain information from an eyewitness or victim establishing the elements of a crime, the information is almost always sufficient to provide probable cause for an arrest in the absence of evidence that the information, or the person providing it, is not credible."). Moreover, qualified immunity "tolerates reasonable mistakes regarding probable cause." *Whitlock*, 596 F.3d at 413. Noting "the breath of Indiana's criminal-conversion statute[,]" *id.*, the Seventh Circuit jumped to the second step of the immunity analysis and affirmed the district court's conclusion that the park officer was entitled to qualified immunity because a reasonable officer would not have known whether the campers' explanation for their conduct was material to the probable-cause determination. *Id.*

The Court concludes that even based on the facts and evidence viewed in a light most favorable to Ms. Atkins, Officer Broadnax is entitled to qualified immunity because he had probable cause to execute the affidavit at issue. The Court has reviewed the Kroger surveillance video and, contrary to Ms. Atkins' assertions, it does not "destroy[ Ms.] Smith's credibility" or "flatly

contradict[ Ms.] Smith's statements." [Dkt. 95 at 8, 10.] While the Court agrees (and the Government Defendants concede) that it does not show Ms. Atkins making multiple trips between the flower area and her trunk, [dkt. 100 at 4], it does show Ms. Atkins stopping her vehicle in the fire lane next to store, opening her trunk, taking something from her trunk, leaving her trunk open as she walks out of view, returning by walking between her vehicle and the store, shutting the trunk, and driving away, [dkts. 48-10; 49]. The inferior quality of the blurry black-and-white video is such that it is not possible to tell exactly what Ms. Atkins is doing, especially when behind her vehicle with the trunk open. The video consists of choppy frames omitting seconds of crucial detail, and the already inferior quality is further diminished by a shadow created by the sun over the area at issue. [*Id.*] In his probable cause affidavit, Officer Broadnax recognized these limitations, attesting that he had viewed the surveillance video and "observed substantially the same events as [Ms. Smith]; however, due to a shadow created by the sun, you cannot see [Ms. Atkins] put the items in her car." [Dkt. 48-2 at 1.] While Ms. Atkins attacks Officer Broadnax for not acknowledging her side of the story or recognizing that she proclaimed her innocence before he filled out the affidavit, [dkt. 95 at 9], she does not dispute that Ms. Smith's allegations, if true, amount to criminal conversion in Indiana. As Officer Broadnax points out, "once police officers have discovered sufficient facts to establish probable cause, they have no constitutional obligation to conduct any further investigation in the hopes of uncovering potentially exculpatory evidence," *Forman v. Richmond Police Dept.*, 104 F.3d 950, 962 (7th Cir. 1997). Moreover, as the Seventh Circuit recognized in *Whitlock*, Indiana's criminal conversion statute is broad and a reasonable officer would not know whether the suspect's explanation for her conduct was material to the probable-cause determination. 596 F.3d at 413.

Given the presence of an unequivocal eyewitness informing Officer Broadnax that she had witnessed events amounting to criminal conversion and an equivocal surveillance video confirming at least some of that witness' allegations, the Court concludes as a matter of law that Officer Broadnax had probable cause to believe a crime had been committed, justifying the execution the affidavit at issue. As the Seventh Circuit has emphasized, the probable cause standard requires only a probability of criminal activity, and information from an eyewitness establishing the elements of a crime is almost always sufficient to provide that. *Whitlock*, 596 F.3d at 411; *McCauley*, 659 F.3d at 651. Accordingly, because the Court concludes that Officer Broadnax had probable cause to execute the affidavit, he is entitled to qualified immunity and summary judgment on Ms. Atkins' claim under 42 U.S.C. § 1983.

### B. State Law Claims against Carmel

#### 1. Jurisdiction

The Court has resolved the sole federal question asserted in this action and, consequently, is left with various state law claims over which it lacks diversity jurisdiction because Indiana citizens are on both side of this litigation. Therefore, the Court must determine whether to exercise its discretion to retain jurisdiction over the supplemental claims pursuant to 28 U.S.C. § 1367(a) or to dismiss them pursuant to 28 U.S.C. § 1367(c). The district court ultimately has discretion whether to exercise supplemental jurisdiction over a plaintiff's state law claims. *Carlsbad Tech., Inc. v. HIF BIO, Inc.*, 129 S. Ct. 1862, 1866 (2009); 28 U.S.C. § 1367(c) ("The district courts may decline to exercise supplemental jurisdiction over a claim . . . if . . . the district court has dismissed all claims over which it has original jurisdiction . . . ."). When deciding whether to exercise supplemental jurisdiction, "'a federal court should consider and weigh in each case, and at every stage of the litigation, the values of judicial economy, convenience, fairness, and comi-

ty.'" *City of Chicago v. Int'l Coll. of Surgeons*, 522 U.S. 156, 173, (1997) (quoting *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988)). It is well-established that the usual practice is to dismiss or remand the state supplemental claims without prejudice. *Groce v. Eli Lilly & Co.*, 193 F.3d 496, 501 (7th Cir. 1999).

Here, the factors the Court must consider weigh in favor of the Court exercising supplemental jurisdiction over the state law claims against Carmel. Those claims are closely related to the § 1983 claim against Officer Broadnax that the Court has already resolved, are fully briefed and ripe for a decision on summary judgment, and in light of the Court's decision that Officer Broadnax possessed probable cause as a matter of law, can be easily resolved. Therefore, judicial economy, convenience, and fairness strongly weigh in favor of the Court retaining supplemental jurisdiction over Ms. Atkins' state law claims against Carmel. The Court finds that any comity concerns in favor of remand are not strong enough to outweigh the judicial economy, convenience, and fairness that result from this Court retaining jurisdiction. For these reasons, the Court, in its discretion, will exercise supplemental jurisdiction over Ms. Atkins' state law claims against Carmel.

### 2. *Merits of Claims*

Ms. Atkins ties the success of her state law claims against Carmel for false arrest and false imprisonment to the success of her § 1983 claim, which has already failed.[2] [Dkt. 95 at 12 ("If the Court denies the Government Defendants' motion for summary judgment with respect to [Ms.] Atkins' Section 1983 claim premised upon the Fourth Amendment, it should also deny Defendants' motion for summary judgment with respect to Atkins' false arrest and false imprison-

---

[2] Ms. Atkins confirms that she is not making a separate false imprisonment claim based upon the charges being filed, [dkt. 95 at 12 n.3]; therefore, the Court will not address the potential application of the judicial proceedings immunity raised by the Government Defendants in support of summary judgment, [dkt. 47 at 18-19].

ment claims against the City of Carmel."]. Moreover, "to succeed upon a claim of false arrest or false imprisonment, Indiana law requires a plaintiff to establish the absence of probable cause for the arrest." *McConnell v. McKillip*, 573 F. Supp. 2d 1090, 1104 (S.D. Ind. 2008). Because the Court has concluded that Officer Broadnax possessed probable cause for the arrest as a matter of law, Ms. Atkins' state law claims against Carmel necessarily fail.

## IV.
### CONCLUSION

For the reasons explained herein, the Court **GRANTS** the Government Defendants' Motion for Summary Judgment. [Dkt. 46.] The Court directs the Clerk to terminate the City of Carmel, Officer William Gilbert, Officer Matthew Broadnax, and Sergeant Brett Keith as parties to this action on the Court's docket. No partial final judgment will issue at this time.

01/02/2013

*(signature)*

Hon. Jane Magnus-Stinson, Judge
United States District Court
Southern District of Indiana

**Distribution via ECF only**:

David Elsworth Deal
VOYLES ZAHN PAUL HOGAN & MERRIMAN
deal@daviddeallaw.com

Douglas C. Haney
CITY OF CARMEL
dhaney@carmel.in.gov

Robert D. King Jr.
LAW OFFICE OF ROBERT D. KING, JR, P.C.
rking@robertkinglaw.com

David Ray Thompson
THE LAW OFFICE OF ROBERT D. KING, JR., P.C.
dthompson@robertkinglaw.com

Daniel Mark Witte
TRAVELERS STAFF COUNSEL OFFICE
dwitte@travelers.com

Jeffrey S. Zipes
COOTS HENKE & WHEELER
jzipes@chwlaw.com