UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| SHARRON ATKINS, )<br>    *Plaintiff*, )<br>)<br>*vs*. )<br>)<br>KROGER COMPANY, *et al*., )<br>    *Defendants*. ) | 1:11-cv-772-JMS-MJD |

## ORDER

Presently pending before the Court is Defendant Kroger Company's ("Kroger") Motion for Summary Judgment on Plaintiff Sharron Atkins' claims against it. [Dkt. 35.] For the following reasons, the Court grants in part and denies in part Kroger's motion.

### I.
### STANDARD OF REVIEW

A motion for summary judgment asks that the Court find that a trial based on the uncontroverted and admissible evidence is unnecessary because, as a matter of law, it would conclude in the moving party's favor. *See* Fed. R. Civ. Pro. 56. To survive a motion for summary judgment, the non-moving party must set forth specific, admissible evidence showing that there is a material issue for trial. Fed. R. Civ. Pro. 56(e); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

As the current version of Rule 56 makes clear, whether a party asserts that a fact is undisputed or genuinely disputed, the party must support the asserted fact by citing to particular parts of the record, including depositions, documents, or affidavits. Fed. R. Civ. Pro. 56(c)(1)(A). A party can also support a fact by showing that the materials cited do not establish the absence or presence of a genuine dispute or that the adverse party cannot produce admissible evidence to support the fact. Fed. R. Civ. Pro. 56(c)(1)(B). Affidavits or declarations must be made on per-

sonal knowledge, set out facts that would be admissible in evidence, and show that the affiant is competent to testify on matters stated. Fed. R. Civ. Pro. 56(c)(4). Failure to properly support a fact in opposition to a movant's factual assertion can result in the movant's fact being considered undisputed, and potentially the grant of summary judgment. Fed. R. Civ. Pro. 56(e).

The Court need only consider the cited materials, Fed. R. Civ. Pro. 56(c)(3), and the Seventh Circuit Court of Appeals has "repeatedly assured the district courts that they are not required to scour every inch of the record for evidence that is potentially relevant to the summary judgment motion before them," *Johnson v. Cambridge Indus.*, 325 F.3d 892, 898 (7th Cir. 2003). Furthermore, reliance on the pleadings or conclusory statements backed by inadmissible evidence is insufficient to create an issue of material fact on summary judgment. *Id*. at 901.

The key inquiry, then, is whether admissible evidence exists to support a plaintiff's claims or a defendant's affirmative defenses, not the weight or credibility of that evidence, both of which are assessments reserved to the trier of fact. *See Schacht v. Wis. Dep't of Corrections*, 175 F.3d 497, 504 (7th Cir. 1999). When evaluating this inquiry, the Court must give the non-moving party the benefit of all reasonable inferences from the evidence submitted and resolve "any doubt as to the existence of a genuine issue for trial . . . against the moving party." *Celotex*, 477 U.S. at 330.

## II.
### BACKGROUND

The material facts in the light most favorable to the non-movant, Ms. Atkins, are as follows. On April 15, 2010, Ms. Atkins went to a Kroger grocery store in Carmel to recycle plastic bags. [Dkt. 94-2 at 2.] Ms. Atkins was a regular shopper at Kroger and had never had a problem with any of the employees. [*Id.*] Ms. Atkins parked her Jeep Cherokee in the fire lane in front of

the main store entrance, opened her trunk to get the plastic bags, went inside the store to recycle them, came back out, and closed the trunk. [*Id.* at 3.]

Kroger had crates of flowers for sale outside the front entrance of the store near where Ms. Atkins had parked. [Dkt. 87-6.] Shortly after Ms. Atkins left the store, April Smith, a Kroger employee, called 911 and reported that a customer, later identified as Ms. Atkins, had stolen some flowers from the outdoor display. [Dkt. 112 at 2.] Carmel Police Officer Matthew Broadnax was dispatched to the store to investigate the allegations. [Dkt. 87-6.] Officer Broadnax talked to Ms. Smith, who accused Ms. Atkins of stealing two trays of Ranunculus flowers, worth approximately $80. [*Id.*] Officer Broadnax reviewed a video surveillance tape and confirmed that it showed "substantially the same events as the witness." [*Id.*] Officer Broadnax noted, however, that "due to a shadow created by the sun, you cannot see the suspect put the items in her car." [*Id.*] Ms. Smith told Officer Broadnax that although she did not know the suspect's name, she was a "regular customer" at the store who often talked about caring for her ninety-year-old father. [*Id.*]

Ms. Atkins returned to Kroger the following day to pick up a few food items. [Dkt. 94-2 at 3.] She was in the store approximately fifteen minutes. [*Id.* at 4.] Ms. Smith saw Ms. Atkins in the store and again called the police. [Dkt. 87-6 at 2.] Officer James Herron was dispatched to the store, and Ms. Smith recounted what she had told Officer Broadnax the previous day. [Dkt. 87-8 at 2.] Ms. Smith told Officer Herron that she had "a good view" the previous day and that she saw Ms. Atkins place "at least three trays of potted plants in the rear hatch" of her car. [*Id.*]

Shortly thereafter, Officer Gilbert and Sergeant Keith performed a traffic stop on Ms. Atkins' vehicle as she was driving home. [Dkts. 87-7; 87-9; 94-2 at 4.] Ms. Atkins initially told

Sergeant Keith that she had not been at Kroger the previous day, but later remembered being there to recycle. [Dkt. 87-9 at 2.] She "strongly denied" stealing any flowers. [Dkts. 87-9 at 2; 87-7 at 2.] Ms. Atkins was read her *Miranda* rights during the stop, [dkt. 87-9 at 2], and was released after being issued a criminal trespass warning for Kroger's property, [dkt. 87-7 at 2]. The traffic stop lasted approximately 66 minutes. [Dkts. 87-14; 87-15.]

On April 20, 2010, Officer Broadnax executed an Affidavit for Probable Cause against Ms. Atkins. [Dkt. 87-6.] Ms. Atkins was charged with conversion, a class A misdemeanor, [dkt. 87-11], but the charges were dismissed by the Hamilton County Prosecutor's Office in August 2010, [dkt. 87-12].

Ms. Atkins filed a state court action in February 2011, and it was removed to federal court in June 2011 after Ms. Atkins amended her complaint to assert federal claims that have since been dismissed.[1] [Dkts. 1; 1-8.] Ms. Atkins asserts claims for negligence, false imprisonment, false reporting, defamation, negligent infliction of emotional distress, and intentional infliction of emotional distress against Kroger. [Dkt. 112.] Kroger now moves for summary judgment. [Dkt. 35.]

### III.
### DISCUSSION[2]

The parties dispute whether Ms. Smith's communications to the police officers, which form the basis of Kroger's alleged liability, are protected by qualified immunity under Indiana law. They also dispute whether Ms. Atkins suffered the direct impact necessary to sustain a neg-

---

[1] Ms. Atkins' suit included claims against various government defendants and the City of Carmel; however, the Court has granted summary judgment in favor of those defendants. [Dkt. 113.] The Court is exercising supplemental jurisdiction over Ms. Atkins' state-law claims against Kroger. [*See* dkt. 121.]

[2] As a federal court sitting in diversity, the Court will apply state substantive law and federal procedural law. *Ritchie v. Glidden Co.*, 242 F.3d 713, 720 (7th Cir. 2001).

ligent infliction of emotional distress claim.  Finally, the parties dispute whether Ms. Smith was acting in the course and scope of her employment if she lied to police officers about Ms. Atkins' actions, although Ms. Atkins argues that Kroger has waived this argument by raising it for the first time on reply.  The Court will address each issue in turn.

### A. Qualified Privilege

#### i. Application

Kroger argues that all of Ms. Atkins' claims fail because Ms. Smith's communications to law enforcement were protected by a qualified privilege. [Dkt. 36 at 4.]  Kroger emphasizes that the qualified privilege exists as a shield for those who report suspected criminal activity, even if the suspicions later turn out to be wrong. [*Id.* at 5.]

In response, Ms. Atkins argues that summary judgment is improper because there is a question of material fact whether an exception to the qualified immunity rule applies to Ms. Smith's statements.  Specifically, Ms. Atkins contends that a reasonable factfinder could find that Ms. Smith was primarily motivated by ill will or made the statements without grounds for belief in their truth, thus negating the qualified immunity privilege. [Dkt. 86 at 9-16.]

"A qualified privilege 'applies to communications made in good faith on any subject matter in which the party making the communication has an interest or in reference to which he had a duty, either public or private, either legal, moral, or social, if made to a person having a corresponding interest or duty.'" *Williams v. Tharp*, 914 N.E.2d 756, 762 (Ind. 2009) (quoting *Bals v. Verduzco*, 600 N.E.2d 1353, 1356 (Ind. 1992)).  The burden is initially on the defendant to establish the existence of a privileged occasion for the communication. *Id.*  If the defendant does so, the burden shifts to the plaintiff to overcome the privilege by showing that it has been abused. *Id.*  "Unless only one conclusion can be drawn from the evidence, the question of whether the

privilege has been abused is for the jury." *Williams*, 914 N.E.2d at 762 (citing *Kelley v. Tanoos*, 865 N.E.2d 593, 601 (Ind. 2007)).

The qualified privilege typically protects private citizens who report crime or assist law enforcement with investigating and apprehending individuals engaged in criminal activity. *Williams*, 914 N.E.2d at 762. But the privilege is not limitless. The Indiana Supreme Court has recognized that "[o]n the other hand, a reporting citizen may, out of an excess of caution or even for a nefarious purpose, make false accusations, and our citizens' equally valid interest in having reputations untarnished by false imputations of criminal misconduct has been a cornerstone of defamation law for hundreds of years." *Id.* at 763. Therefore, a statement is not privileged if (1) the communicator was primarily motivated by ill will in making the statement; (2) there was excessive publication of the defamatory statements; or (3) the statement was made without belief or grounds for belief in its truth. *Id.* at 763-64. Ms. Atkins contends that either the first or third exception applies.

Ms. Atkins does not dispute that Kroger has met its initial burden to establish that Ms. Smith's communications to the police officers were privileged. The parties do, however, dispute whether the first or third exception applies. The Court concludes that issues of material fact exist regarding whether Ms. Atkins was primarily motivated by ill will and whether she made her statements without grounds for belief in their truth. On one hand, as Kroger points out, the video corroborates some of what Ms. Smith told the police, which favors applying the privilege. For example, the video shows Ms. Atkins stopping her vehicle in the fire lane next to store, opening her trunk, taking something from her trunk, leaving her trunk open as she walks out of view, returning by walking between her vehicle and the store, shutting the trunk, and driving away. [Dkt. 87-13.] But on the other hand, as Ms. Atkins points out, the video does not show Ms. At-

kins making multiple trips between the flower area and her trunk, as Ms. Smith insisted that she had. [*Id.*] And as the Court observed in its order granting summary judgment in favor of the police officers, the black-and-white surveillance video is of inferior quality, such that it is not possible to tell exactly what Ms. Atkins is doing, especially when behind her vehicle with the trunk open. [Dkt. 113 at 8 (referencing dkt. 87-13).] The choppy frames omit seconds of crucial detail, and the already inferior quality is further diminished by a shadow created by the sun over the area at issue. [*Id.*]

In addition to the equivocal surveillance video, issues of material fact surrounding Ms. Smith's possible ill will and motivation may be apparent from her hostile deposition testimony.[3] Ms. Smith testified that she hated working at Kroger, did not like anyone she worked with, did not like working with the customers, and hated some of the customers at Kroger. [Dkt. 87-3 at 9-10.] Although she testified that she did not remember Ms. Atkins or the key events at issue, [*id.* at 8-10], at the time Ms. Smith reported the alleged theft to the police, she had previously said that Ms. Atkins was a regular shopper who came in two to four times per week and often talked about caring for her ninety-year-old father, [dkt. 87-6 at 1].

Making all reasonable inferences in favor of Ms. Atkins as this Court is required to do on summary judgment, the Court concludes that it is possible a jury could conclude that Ms. Smith was either motivated by ill will or lacking a genuine belief when she reported Ms. Atkins' alleged theft to the police. Accordingly, in this case, the question of whether the qualified privilege has been abused must be answered by a jury. *See Williams*, 914 N.E.2d at 762 ("And unless only one conclusion can be drawn from the evidence, the question of whether the privilege has

---

[3] While Ms. Atkins asks the Court to draw an adverse inference from Ms. Smith's reference to the Fifth Amendment during her deposition, [dkt. 86 at 12-15], the Court will not do so because Ms. Smith ultimately declined to invoke her privilege against self-incrimination, [dkt. 87-3 at 4].

been abused is for the jury."); *see also O'Leary v. Accretive Health*, Inc., 657 F.3d 625, 630 (7th Cir. 2011) ("It is not for courts at summary judgment to weigh evidence or determine the credibility of a witness's testimony; we leave those tasks to factfinders.").

### ii. Course and Scope of Employment

For the first time on reply, Kroger argues that even if Ms. Atkins' communications are not protected by a qualified privilege, any lies to law enforcement would fall outside the course and scope of her employment, such that Kroger would not be liable for her actions. [Dkt. 97 at 11-13.]

In a surreply, Ms. Atkins asks the Court to find Kroger's course and scope of business argument to be waived. [Dkt. 103 at 1-2.] Ms. Atkins substantively challenges Kroger's argument by citing a Kroger policy authorizing all employees to report shoplifters and she also directs the Court to Indiana case law she contends supports her argument that Ms. Smith's actions were in the course and scope of her employment. [*Id.* at 7-11.]

As an initial matter, the Court agrees with Ms. Atkins that Kroger waived this argument by waiting until its reply brief to raise it for the first time. *Griffin v. Bell*, 694 F.3d 817, 822 (7th Cir. 2012) ("[A]rguments raised for the first time in a reply brief are deemed waived."). Because the Court prefers to address arguments on the merits, however, and Ms. Atkins was able to file a surreply substantively responding to Kroger's untimely argument, the Court will still address it on the merits.

Under the doctrine of respondeat superior, an employer is liable for the acts of its employees which were committed within the course and scope of their employment. *Stropes v. Heritage House Childrens Center of Shelbyville,* 547 N.E.2d 244, 247 (Ind. 1989). An employee is acting within the scope of her employment when she is acting, at least in part, to further the

interests of her employer. *Konkle v. Henson*, 672 N.E.2d 450, 456 (Ind. Ct. App. 1996) (citing *Gomez v. Adams*, 462 N.E.2d 212, 223 (Ind. Ct. App. 1984)). An employer can be held liable even for the actions of an employee who is primarily motivated by self-serving purposes, if she was at least partially serving her employer's interests. *Id.* at 457. Likewise, situations may arise in which vicarious liability may be imposed upon employers for the tortious or criminal acts of their employees. *Barnett v. Clark*, 889 N.E.2d 281, 284 (Ind. 2008). Determining whether an employee's actions were within the scope of her employment is "dependent on the facts and circumstances of each case" and "generally a question of fact for the jury." *Gomez*, 462 N.E.2d at 223.

Making all reasonable inferences in favor of Ms. Atkins as this Court is required to do on summary judgment, the Court concludes that issues of material fact surround whether Ms. Smith was acting in the course and scope of her employment when she made theft allegations against Ms. Atkins. Kroger had a shoplifting policy that provided, in relevant part, that "All associates play a part in combating shoplifting and are expected to be observant, provide excellent customer service and report suspicious behavior." [Dkt. 104-1 at 1 (emphasis in original).] While this may suggest that Ms. Smith was furthering Kroger's interests when she reported the alleged theft, because Ms. Smith's credibility and motivations will be an issue for the jury at trial, the Court cannot determine as a matter of law whether Ms. Smith was acting in the course and scope of her employment. Accordingly, it rejects Kroger's argument.

### B. Negligent Infliction of Emotional Distress Claim

Kroger argues that Ms. Atkins' claim for negligent infliction of emotional distress fails because the undisputed evidence shows that Ms. Atkins did not suffer the requisite direct impact as a result of Kroger (or Ms. Smith's) actions. [Dkt. 36 at 6-7.]

Ms. Smith argues that she was directly impacted by the police officers and there is no requirement under Indiana law that Kroger (the alleged tortfeasor) be the one to initiate the contact. [Dkt. 86 at 16-18.]  She emphasizes that police video of the traffic stop shows that the officers touched her at least five times.  [*Id.* at 17 (citing dkts. 87-14; 87-15.]

The Indiana Supreme Court recently emphasized that a "stand-alone action[] for negligent infliction of emotional distress [is] not cognizable in Indiana" and that an action seeking damages for emotional distress cannot be "predicated upon a breach of an alleged duty not to inflict emotional injury on another."  *Spangler v. Bechtel*, 958 N.E.2d 458, 466 (Ind. 2011).  Instead, under any of the scenarios that can constitute negligent infliction of emotional distress, "the defendant's negligence in breaching a legal duty is a required predicate."  *Id.*

The Indiana Supreme Court has also held that the direct impact sustained by the plaintiff must be a physical one; however, it "does not need to cause physical injury to the plaintiff" and "the emotional trauma suffered by the plaintiff does not need to result from a physical injury caused by the impact."  *Atlantic Coast Airlines v. Cook*, 857 N.E.2d 989, 996 (Ind. 2006).  In answering a rhetorical question regarding how to assess whether the degree of impact is sufficient to satisfy the requirement of the modified-impact rule, the Indiana Supreme Court said:

> [W]hen the courts have been satisfied that the facts of a particular case are such that the alleged mental anguish was not likely speculative, exaggerated, fictitious, or unforeseeable, then the claimant has been allowed to proceed with an emotional distress claim for damages even though the physical impact was slight, or the evidence of physical impact seemed to have been rather tenuous.

*Id.*  The Indiana Supreme Court has also held that it "matters little how the physical impact occurs, so long as that impact arises from the plaintiff's direct involvement in the tortfeasor's negligent conduct."  *Conder v. Wood*, 716 N.E.2d 432, 435 (Ind. 1999).

The Court rejects Ms. Atkins' argument that the physical impact she sustained by the police officers at the traffic stop is sufficient for her to pursue a negligent infliction of emotional distress claim against Kroger.  Applicable precedent requires the impact to arise from Ms. Atkins' "direct involvement" with Kroger's conduct.  *Condor*, 716 N.E.2d at 435.  But the physical impact to which Ms. Atkins points occurred off Kroger's property, by individuals over which Kroger had no control, and the day after Kroger's employee made the initial police report.  The Court concludes that impact is too attenuated for Ms. Atkins to sustain a negligent infliction of emotional distress claim against Kroger as a matter of law.  For these reasons, the Court grants summary judgment in favor of Kroger on Ms. Atkins' negligent infliction of emotional distress claim.

## IV.
### CONCLUSION

For the reasons explained herein, the Court **GRANTS IN PART AND DENIES IN PART** Kroger's Motion for Summary Judgment.  [Dkt. 35.]  The motion is granted to the extent that the Court enters summary judgment in favor of Kroger on Ms. Atkins' negligent infliction of emotional distress claim, but denies Kroger's motion in all other respects.  The Court requests that Magistrate Judge Dinsmore confer with the parties to obtain mutually available trial dates if the upcoming settlement conference is unsuccessful.

02/13/2013

_____
Hon. Jane Magnus-Stinson, Judge
United States District Court
Southern District of Indiana

**Distribution via ECF only:**

David Elsworth Deal
VOYLES ZAHN PAUL HOGAN & MERRIMAN
deal@daviddeallaw.com

Douglas C. Haney
CITY OF CARMEL
dhaney@carmel.in.gov

Robert D. King Jr.
LAW OFFICE OF ROBERT D. KING, JR, P.C.
rking@robertkinglaw.com

David Ray Thompson
THE LAW OFFICE OF ROBERT D. KING, JR., P.C.
dthompson@robertkinglaw.com

Daniel Mark Witte
TRAVELERS STAFF COUNSEL OFFICE
dwitte@travelers.com

Jeffrey S. Zipes
COOTS HENKE & WHEELER
jzipes@chwlaw.com